# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAVID BROWN (#K77874),

    Plaintiff,

v.

KIM DUVALL, et al.,

    Defendants.

No. 15 CV 1672

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff David Brown, a prisoner confined at Stateville Correctional Center proceeding *pro se*, brought this 42 U.S.C. § 1983 action asserting that he endured extremely adverse living conditions at the prison during a six-month segregation term. The defendants are former Illinois Department of Corrections Director Salvador Godinez, former warden of Stateville, Tarry Williams, and former F-House counselor, Kim Duvall. Defendants move for summary judgment, but as discussed below, judgment as a matter of law would not be appropriate on this record. Defendants' motion is denied.

## I.  Background

The facts are taken from defendants' undisputed N.D. Ill. Local Rule 56.1 Statements of Material Facts and facts included in plaintiff's response and supporting affidavit, where he is competent to testify as to those facts. *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). The parties have generally complied with Local Rule 56.1; defendants submitted a Statement of Uncontested

Facts, [29], to which plaintiff responded, [35].[1] Plaintiff also submitted a memorandum of law opposing defendants' motion. [36]. Defendants notably do not argue that plaintiff's response, affidavit, or attachments fail to comply with the Local Rule, or that his exhibits are inadmissible. Plaintiff objected to many of defendants' statements of fact as "unsupported by the record," without elaboration, *see* [35] at 1–12; where defendants' statements are properly supported by the cited materials and are not otherwise disputed by evidence plaintiff raises, including his deposition testimony, [29-2], and declaration, [35] at 13–17, the statements are undisputed. *See* Local Rule 56. 1(b)(3)(C).

Plaintiff is and was an inmate confined at the Stateville Correctional Center. [29] ¶ 1; [35] at 1. On December 7, 2014, he was assigned to F-House, cell 108, for a six-month term in segregation (though plaintiff stayed in cell 108 for only four and a half months). [29] ¶¶ 7–8; [29-2] at 14–15, Tr. at 14:17–15:19; [35] at 3; *id.* at 13 ¶¶ 1–2. At that time, Kim Duvall was an F-House counselor, Tarry Williams was the Stateville warden, and Salvador Godinez was the IDOC Director. [29] ¶¶ 2–4; [35] at 2.

Plaintiff asserts that, between December 2014 and April 2015, he experienced adverse living conditions at Stateville Correctional Center: (1) he endured cold conditions in his cell and in the shower due to broken windows and had no blanket or extra layers of clothing; (2) he was provided inadequate and inappropriate bedding; (3)

---

[1] Bracketed numbers refer to entries on the district court docket.

his toilet had a buildup of waste, malfunctioned several times and was not promptly fixed; (4) his food trays were left to get cold outside his cell, where birds sometimes landed on them before plaintiff was served; and (5) pests infested his cell. *See* May 4, 2015 Screening Order, [7] at 1; Complaint, [8] at 4; [29] ¶¶ 7, 12, 15–24; [35] at 3–8; *id.* at 14–15 ¶¶ 3–19.[2]

## A. Cold Conditions

Plaintiff was subjected to cold conditions in his cell and in the shower area. His cell window would not close and remained open at least an inch, so that cold winter air "constantly" blew through the window into the cell. [29] ¶ 24; [35] at 8; *id.* at 14 ¶ 5. Plaintiff was not given a blanket for approximately two months and was allowed only t-shirts, boxer shorts, a jumpsuit, and socks for clothing. [29] ¶ 10; [35] at 4; *id.* at 14 ¶¶ 3, 6. Plaintiff withstood "extreme cold." [35] at 14 ¶ 6. The shower-area windows also were broken, and wintry air filled the room, although hot water came out of the showers themselves. [29] ¶¶ 22, 25; [35] at 15 ¶¶ 19–20. Plaintiff got sore throats after showering and saw medical personnel several times for colds. [29-2] at 44, Tr. at

---

[2] Defendants in their Reply ask the court not to consider plaintiff's descriptions of his malfunctioning toilet, broken cell-house window, or of his mattress as moldy (as opposed to merely flat and worn down), because such conditions were not "adequately pled" in his original complaint. Plaintiff, however, testified in his deposition regarding his broken toilet and cell-house window (which also may have contributed to the pest infestation and cold conditions he referenced in his complaint), [29-2] at 19, Tr. at 19:16–:18; *id.* at 22–23, Tr. at 22:22–23:10; and he was not asked about the particular condition of his mattress, although he mentioned several times that he had complaints regarding it, *id.* at 45, Tr. at 45:20–:24; *id.* at 49, Tr. at 49:1–:3. This is, therefore, not a case in which plaintiff is amending his complaint by describing or adding new conditions for the first time in response to a summary judgment motion; there are no inconsistencies between plaintiff's declaration and his deposition testimony regarding these issues (and defendants do not point to any specific contradictions). Plaintiff's competent evidence of these conditions is admitted for the present motion.

44:10–:18; [35] at 15 ¶ 20. A February 13, 2015 memorandum from Joy Vanderweit, an RN supervisor to the Assistant Warden of Operations, reported that F-House windows were "not . . . in good repair." [35] at 18.

### B. Other Conditions

Plaintiff was not given a pillow upon his placement in segregation. [35] at 14 ¶ 7. He also variously described his mattress as "flat . . . and worn down" and as moldy, dirty, and filthy. [8] at 4; [35] at 4; *id.* at 14 ¶ 10. He was given a sheet to cover the mattress, but he did not receive a top sheet. [29-2] at 16–17, Tr. at 16:23–17:10. Plaintiff initially lacked a blanket as well. *Id.* at 17:11–:14. The Vanderweit memorandum reported that F-House mattresses were "not in good condition." [35] at 18. As a result of his inadequate bedding, plaintiff had "excruciating back and neck pain," for which he received treatment, including pain medication. [29-2] at 34–35, Tr. at 34:4–35:6; [35] at 14 ¶¶ 8–9.

Plaintiff's segregation toilet had large amounts of buildup due to frequent flushes. [8] at 4. Plaintiff was not given cleaning supplies. [35] at 15 ¶ 13. The toilet sometimes broke, causing excrement to back up and sit in it until fixed, which could be a few days or up to a week later. [29] ¶ 17; [29-2] at 19–20, Tr. at 19:16–20:19; [35] at 14–15 ¶¶ 11–12. This happened three times while plaintiff was in segregation. [29] ¶ 17; [29-2] at 19–20, Tr. at 19:16–20:4. During these times, plaintiff was permitted to use a bathroom in another cell during the first and second shifts but not overnight. [29-2] at 20–21, Tr. at 20:20–21:13.

4

Plaintiff ate his meals in his cell. [29-2] at 29, Tr. at 29:21–:23. Inmates distributed food trays, which were placed outside the chuckhole until a guard came to unlock the chuckhole. *Id.* at 42–43, Tr. at 42:21–43:5. The food could sit for twenty to thirty minutes before the chuckhole was unlocked. *Id.*, Tr. at 43:6–:10; [29] ¶ 19; [35] at 6–7. In the meantime, the food became cold and was exposed to birds, which landed on plaintiff's tray at least twice. [8] at 4; [29-2] at 43, Tr. at 43:11–:23.

Plaintiff shared his cell with mice, cockroaches and other insects. [35] at 15 ¶ 17. It was not uncommon for him to see from two to three or up to twenty to thirty cockroaches. [29-2] at 39, Tr. at 39:7–:20. Nearly every night, plaintiff saw twenty to thirty cockroaches. *Id.*, Tr. at 39:14–:16. Rodents damaged his personal belongings, and he saw mice two to three times each week. [29] ¶ 15; [29-2] at 40–41, Tr. at 40:21–41:2; [35] at 15 ¶ 17. Portions of F-House were sprayed for pests once a month. [29] ¶¶ 34–35. Plaintiff's cell was not sprayed. [35] at 15 ¶ 18. The Vanderweit memorandum reported that F-House was "not free of insects/rodents, birds and other animals." *Id.* at 18. A similar memorandum from May of 2015 also reported the presence of "insects, rodents, birds or other animals" in F-House. *Id.* at 19.

C. **Reports to Defendants Regarding Conditions**

Plaintiff reported the foregoing cell and prison conditions to defendants Williams and Godinez through written letters. [29] ¶¶ 30, 33; [35] at 10–11. He never received responses to his letters. *Id.* Plaintiff also told defendant Williams about the conditions while Williams made rounds in F-House. [29] ¶ 32; [35] at 11. Williams

5

immediately told a correctional officer to give plaintiff a blanket, which plaintiff received, and told plaintiff that windows had been fixed and that the cells would be sprayed for pests. *Id.* In late December, plaintiff submitted a grievance form to defendant Duvall, who ultimately, after plaintiff followed up twice, told him she did not know where it was. [29-2] at 11–12, Tr. at 11:23–12:24; *id.* at 27, Tr. at 27:3–:8; [35] at 15–16 ¶¶ 21–25. Duvall told plaintiff he could resubmit his grievance, but he did not do so, believing it to be "useless" given his letter-writing and verbal complaints. [29-2] at 54–55, Tr. at 54:11–55:1. Plaintiff did not receive a response to his grievance. *Id.* at 27–28, Tr. at 27:20–28:3; [35] at 17 ¶ 30. Plaintiff also wrote and spoke to Duvall about the conditions. [29] ¶ 27; [29-2] at 48, Tr. at 48:14–:22.

## II. Analysis

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When addressing a motion for summary judgment, the district court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012) (citation omitted). The court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citation omitted). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Goup, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citations omitted); *see also Tolan*, 134 S. Ct. at 1866.

As to plaintiff's specific claims, the Eighth Amendment imposes a duty to "provide humane conditions of confinement," and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted); *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Determining the violation of this constitutional right involves a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citation and internal quotation marks omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* (citations omitted).

### A. Sufficiently Serious Conditions

Defendants argue that the conditions at issue were not sufficiently serious conditions to implicate constitutional concerns. The minimal civilized measure of life's necessities includes heat, clothing, sanitation, and hygiene items. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citations omitted); *see also Farmer*, 511 U.S. at 832. To implicate the Eighth Amendment, however, the deprivation must create a serious risk to an inmate's health or safety, *see Farmer*, 511 U.S. at 834, which may be shown by conditions that create a sufficiently high probability of harm. *Thomas v. Ill.*, 697

7

F.3d 612, 614–15 (7th Cir. 2012). Even when an individual condition of confinement is not serious enough to violate the Constitution, conditions may cumulatively do so "when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)) (additional citations omitted).

### 1. Cold Conditions

Defendants argue that "there is no evidence that Plaintiff was exposed to a substantial risk of harm" from cold conditions in his cell and in the shower area because he did not mention the broken cell window until his deposition, and because the shower water was hot.

The right to humane conditions includes "a right to be free from extreme hot and cold temperatures." *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir.1986); *see also Gillis*, 468 at 493–94. When addressing whether cell temperatures were sufficiently extreme, "courts should examine several factors . . . , such as the severity of the cold; its duration; whether the prisoner ha[d] alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he [had to] endure other uncomfortable conditions as well as cold." *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). "Cold temperatures need not imminently threaten an inmate's health to violate the Eighth Amendment." *Id.* (citing *Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994)). Prisoners have a constitutional right "not to be confined in a cell at so low a temperature as to cause severe discomfort." *Id.*

8

(quoting *Del Raine*, 32 F.3d at 1035); *see also Henderson v. DeRobertis*, 940 F.2d 1055, 1060 (7th Cir. 1991); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

In the instant case, issues of disputed fact exist as to whether plaintiff's cell temperatures in late 2014 and early 2015 were cold enough to support a constitutional claim. Defendants do not contest plaintiff's contention that his cell window would not close or that the shower-area windows were broken and let wintry air inside. Plaintiff described the cold as "extreme," and the broken windows permit an inference that temperatures dipped too low to be within constitutional parameters. *See Bentz v. Hardy*, — F. App'x —, No. 15-1344, 2016 WL 1391851, at *1 (7th Cir. Apr. 8, 2016). Defendants submit no reports of temperature readings from inside F-House (much less from inside plaintiff's cell or the showers) in this time frame. Nor are there affidavits, declarations, or other evidence from defendants, Stateville engineers, or maintenance persons about the heating system, temperatures, or conditions in these areas. Consequently, there is at least a disputed issue of material fact as to whether plaintiff's cell temperatures and the air temperatures in the shower area were "so low . . . as to cause severe discomfort." *Dixon*, 114 F.3d at 644 (quoting *Del Raine*, 32 F.3d at 1035).

Disputed issues of material fact also prevent judgment as to whether plaintiff had adequate means of keeping warm despite the broken windows. Defendants insist that plaintiff had enough clothing to wear, including a jumpsuit, boxer shorts, t-

9

shirts,[3] and socks, to stave off the cold. [28] at 6. However, "[t]he salient point" is not that plaintiff had the standard issuance of clothing, but "that [he] did not receive *extra* clothes or blankets after he was moved into the segregation cell with the broken window, and so, in fact, the defendants did not compensate *at all* for the cold." *Bentz*, 2016 WL 1391851, at *2. The parties dispute whether plaintiff might simply have been able to buy more clothing at the commissary if he were cold, [28] at 6; [36] at 10, but even if the opportunity existed, it is not sufficient to evade Eighth Amendment liability as a matter of law. *See Bentz*, 2016 WL 1391851, at *2. Plaintiff seems to have no longer suffered after he received a blanket two months into his segregation term, but the record is undeveloped on this point. Either way, there remains a question regarding whether the clothing, mattress and fitted sheet (with no pillow) that plaintiff had before receiving the blanket provided warm enough sleeping materials to protect against the cold plaintiff endured in his first two months of segregation. The disputed facts cannot be determined on the current record, and they in any case, concern matters "peculiarly appropriate for resolution by the trier of facts." *Dixon,* 114 F.3d at 643.

---

[3] Defendants also list "underclothes," but this appears to refer to t-shirts and boxer shorts, rather than an additional item of clothing.

### *2. Unsanitary Conditions*

Defendants argue that "there is no evidence to support that the failure to provide a pillow amounted to a deprivation of [constitutional] magnitude." [28] at 4. Plaintiff's complaint is broader than Defendants suggest—it is not simply about comfort, but about sanitary conditions. Plaintiff says that he was provided only with a thin, dirty or moldy mattress and a fitted sheet. He had no pillow during his entire segregation stint and no blanket for about two months. A jury could not conclude that a thin mattress without a pillow amounts to a condition that exposes a prisoner to substantial risk of harm. But the adequacy of plaintiff's bedding bears on plaintiff's exposure to cold (discussed above) and also relates to sanitation. "[A] lack of sanitary conditions, including clean bedding, may qualify as a denial of the minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 774 (citation and internal quotation marks omitted); *id.* at 768, 774 (finding sound the parties' shared assumption that an inmate's having a "wet, moldy, foul smelling mattress" for 59 days implicated the Eighth Amendment). A jury could conclude that a sheet on a dirty or moldy mattress, with no pillow, and no blanket for at least two months, was constitutionally deficient bedding, in connection with the other evidence of unsanitary conditions.

As noted above, plaintiff's testimony about his broken toilet is admissible and consistent with his complaint that he was subjected to unconstitutional conditions while in segregation. Unsanitary exposure to waste can violate the Eighth

11

Amendment. *See Johnson v. Pelker,* 891 F.2d 136, 139 (7th Cir. 1989); *Kimbrough v. O'Neil,* 523 F.2d 1057, 1058–59 (7th Cir. 1975); *DeSpain v. Uphoff,* 264 F.3d 965, 974–75 (10th Cir. 2001). Although plaintiff had access to another toilet during the day, he had to relieve himself in the broken toilet at night and to eat and remain in his cell with the non-functioning toilet.

Plaintiff's evidence of pests reinforces plaintiff's claim of objectively unsanitary conditions. While a bird landing on plaintiff's food tray at least twice might not amount to a standalone Eighth Amendment violation, it does provide further evidence that plaintiff was not provided a "healthy, habitable environment." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm,* 639 F.2d 559, 570–71 (10th Cir. 1980)). Plaintiff described seeing two to three cockroaches during the day and twenty to thirty most nights, and seeing mice a few times a week. An internal memorandum reported the ongoing presence of insects in February of 2015, generally supporting plaintiff's assertion that the pest problem remained serious throughout his term in F-House. A "prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation" of constitutional magnitude. *Sain v. Wood,* 512 F.3d 886, 894 (7th Cir. 2008) (citation omitted).

Plaintiff's failure to demonstrate physical harm from these conditions does not mean defendants are entitled to judgment as a matter of law. *See Bentz,* 2016 WL 1391851, at *2–*3 (noting that "such a showing is not necessary" for claim regarding cold conditions and that jury might find an Eighth Amendment violation without

12

showing of physical harm from pests, based upon "the extent, duration, and kind of infestation an inmate was made to endure") (citing, *inter alia*, *Thomas*, 697 F.3d at 614).

## B. Deliberate Indifference of Defendants

Given the foregoing, summary judgment hinges on whether the record establishes the absence of deliberate indifference by defendants. "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded the risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773 (citation and internal quotation marks omitted). The inmate must show more than mere negligence; he must show "that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id.* (citations omitted).

Defendants first argue that plaintiff failed to show that all defendants were aware of plaintiff's plight. Defendants begin with Director Godinez. Viewing the current record in a light most favorable to plaintiff, there is evidence demonstrating that Godinez knew of the conditions in F-House in December 2014, near the beginning of plaintiff's segregation term. Plaintiff states that he wrote two letters to Godinez that month, and, in each, complained of the cell and F-House conditions. Although defendants contend plaintiff has no evidence that Godinez received or read the letters, defendants do not dispute that plaintiff sent them through the prison's internal

13

mailing system, and they provide no reason to believe Godinez did not receive them. Godinez, in fact, does not deny receiving the letters. The evidence similarly supports an inference that plaintiff notified Warden Williams of the conditions, both in letters sent through the prison mail system and in person, and that he notified Duvall through a letter and grievance, and through conversations.

Defendants argue that Williams was not deliberately indifferent to plaintiff's concerns because, when plaintiff complained verbally, Williams told plaintiff the windows had been fixed and someone would spray for insects, and instructed an officer to give plaintiff a blanket, which he promptly received. [28] at 8. Much of the foregoing is, at best, disputed, however. Plaintiff says that the windows remained broken throughout his stay in F-House in 2014–2015, and no record evidence contradicts him. Although providing plaintiff the blanket may have sufficiently addressed his complaints about the temperature in his cell (the record is undeveloped on this point), he received the blanket weeks after he had written Williams regarding his suffering in the cold. A reasonable jury could find that the delay unnecessarily prolonged plaintiff's exposure to cold and evinced deliberate indifference on Williams's part.

Further, plaintiff insists that no one ever sprayed for insects in cell 108 while he was housed there, and that the pest infestation continued throughout his segregation term. The spraying records support plaintiff's version of events—there is no indication that F-House cells were sprayed during plaintiff's segregation term. Moreover, IDOC memoranda noted the ongoing presence of pests in F-House through May of 2015,

14

suggesting that the methods that were undertaken remained ineffective over time. There is no indication that Williams (or any other defendant) acted on any of plaintiff's other complaints.[4] A reasonable jury could therefore find that defendants' mere reliance upon a contractor's spraying, on a rotating basis, different portions of F-House each month (which did not include cells) did not satisfy constitutional demands, particularly where the infestation continued, and a broken cell window may have "invited in more pests." *Bentz*, 2016 WL 1391851, at *2 ("[E]vidence of a pest control contract alone does not necessarily exculpate the defendants since persisting in an ineffective method of pest control may be evidence of deliberate indifference." (citing *Sain,* 512 F.3d at 895; *Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996))).

As to Duvall, defendants argue that there is no evidence that she could have done more than she allegedly did—advise plaintiff to file a grievance regarding the conditions he raised verbally to her. Defendants sidestep several components of plaintiff's evidence, however. He alleges that he did file a grievance that was misplaced (and defendants notably do not contend that he failed to exhaust available administrative remedies). Plaintiff also asserts that he told Duvall verbally and in writing about the conditions he endured. Moreover, Duvall has not submitted any affidavit of her own and does not assert that her powers were limited to telling prisoners to file grievances about conditions she witnessed while making rounds. At the very least, disputed issues of fact exist as to whether Duvall was aware of the

---

[4] Godinez's knowledge of plaintiff's concerns and apparent lack of action would support a jury's conclusion that he drew an inference that plaintiff was subjected to a substantial risk of harm.

conditions Plaintiff raised, and whether she took reasonable steps within her power to address them.

## C. Qualified Immunity

Finally, Defendants argue they are entitled to qualified immunity. They are not. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000)). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010)).

Defendants contend that plaintiff has no evidence establishing that the conditions he endured in the 2014–2015 winter were serious enough to implicate constitutional concerns, or that defendants were aware of the condition. As discussed above, the record is at best murky as to the severity of the conditions and defendants' knowledge of them. And, contrary to defendants' assertion that a ruling against them "would require the announcement of new law for which they would have been

unaware," [28] at 10, the law defining a prisoner's right not to be subjected to conditions like those plaintiff endured (namely, unbearable cold and unsanitary conditions), and explaining a prison official's need to take reasonable corrective action, was clearly established as of December of 2014. *See Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) (noting that "mutually reinforcing" conditions may violate Eighth Amendment even where each alone would not); *Townsend*, 522 F.3d at 774 (clean bedding); *Dixon*, 114 F.3d at 644 (cold); *Del Raine*, 32 F.3d at 1035 (same); *Antonelli*, 81 F.3d at 1431 (pests). Qualified immunity therefore does not apply.

### III. Conclusion

Defendants' motion for summary judgment, [27], is denied. A status hearing is set for 6/15/16 at 10:30 a.m.

ENTER:

                                                  Manish S. Shah

Date: 6/3/16                                     United States District Judge